

RECEIVED
CLERK, U.S. DISTRICT COURT

12/16/19

CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_\_MAT\_\_\_\_\_ DEPUTY

# United States Court of Appeals for the Federal Circuit

---

**BLACKBIRD TECH LLC, DBA BLACKBIRD TECHNOLOGIES,**
*Plaintiff-Appellant*

v.

**HEALTH IN MOTION LLC, DBA INSPIRE FITNESS, LEISURE FITNESS EQUIPMENT LLC,**
*Defendants-Appellees*

---

2018-2393

---

Appeal from the United States District Court for the Central District of California in No. 2:17-cv-03488-R-GJS, Senior Judge Manuel L. Real.

---

Decided: December 16, 2019

---

JEFFREY AHDOOT, Blackbird Tech LLC, Boston, MA, argued for plaintiff-appellant. Also represented by WENDY VERLANDER; STAMATIOS STAMOULIS, Stamoulis & Weinblatt LLC, Wilmington, DE.

WILLMORE F. HOLBROW, III, Buchalter, A Professional Corporation, Los Angeles, CA, argued for all defendants-appellees. Defendant-Appellee Health In Motion LLC also represented by CHRISTINA LE TRINH, Irvine, CA.

---

Before PROST, *Chief Judge*, WALLACH and HUGHES, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Appellant Blackbird Tech LLC ("Blackbird") sued Appellees Health In Motion LLC ("HIM") and Leisure Fitness Equipment LLC ("Leisure") (together, "Appellees") in the U.S. District Court for the District of Delaware, and later transferred to the U.S. District Court for the Central District of California, for infringement of U.S. Patent No. 6,705,976 ("the '976 patent") owned by Blackbird. After more than nineteen months of litigation, Blackbird voluntarily dismissed its suit with prejudice and executed a covenant not to sue, after which Appellees were granted attorney fees and expenses in the amount of $363,243.80. *Blackbird Tech LLC v. Health In Motion LLC*, No. 2:17-cv-03488-R-GJS (C.D. Cal. Sept. 10, 2018) (Order) (J.A. 17–20).

Blackbird appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2012). We affirm.

## BACKGROUND

In October 2016, Blackbird sued Appellees in the U.S. District Court for the District of Delaware ("Delaware District Court") for infringement of the '976 patent. J.A. 418–28 (Original Complaint).[1] The '976 patent relates to "exercise equipment," '976 patent col. 1 l. 11, and more

---

[1] Blackbird is an entity owned and controlled entirely by attorneys, *see* Oral Arg. at 3:53–4:25, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2018-2393.mp3, whose business model consists of purchasing patents and monetizing them "through litigation," J.A. 1258–59 (Declaration of Blackbird's Vice President and Head of Litigation).

particularly to "[e]xercise equipment including a housing having a structural surface defining an arcuate path" and "multiple pairs of pulleys positioned along the arcuate path, each pair of pulleys having passed between them a cable the proximal end of which is located outside the curved path, the distal end of the cable being coupled to a source of resistance within the housing," *id.*, Abstract.

In March 2017, Appellees filed a motion to transfer to the U.S. District Court for the Central District of California ("District Court"). J.A. 28. The Delaware District Court granted Appellees' motion to transfer in April 2017. *Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, No. 1:16-cv-00733–GMS, 2017 WL 1536394, at *1 (D. Del. Apr. 27, 2017) (J.A. 536, 547); *see id.* at *1 n.2 (explaining that "HIM has incorporated by reference TuffStuff's arguments in its motion to transfer . . . , therefore the court's memorandum and order will apply to both cases").

In June 2017, Blackbird offered to settle its case against Appellees for $80,000. J.A. 2069. Appellees declined Blackbird's offer, explaining that Blackbird's "infringement allegations lack[ed] merit" "[i]n view of the substantial differences between what is claimed in the [']976 [p]atent and the accused device," viz., HIM's M1 Multi-Gym. J.A. 2070; *see* J.A. 1176, 1185–86 (User Manual for the M1 Multi-Gym).[2] Appellees also explained that they "believe[d] there [was] a strong likelihood" that Blackbird would be ordered to pay Appellees' attorney fees, and countered with a settlement offer that included, inter alia, Blackbird "mak[ing] a payment of $120,000" to Appellees.

---

[2]   HIM "designs, markets[,] and sells fitness equipment," including the M1 Multi-Gym, "throughout the United States." J.A. 561. Leisure "operates numerous retail outlets, throughout the [United States], where it sells various types of physical fitness equipment, including the M1 [Multi-Gym]." J.A. 561.

J.A. 2070. In October 2017, Blackbird made another settlement offer, this time for $50,000. J.A. 2241; *see* J.A. 1440 ("Blackbird's counsel . . . made an oral offer to settle the case if [Appellees] paid Blackbird $50,000."). Again, Appellees declined. J.A. 1140, 2241. In April 2018, Blackbird offered to settle yet again, this time for $15,000. J.A. 1440. Appellees once again declined, "maintain[ing] their request that Blackbird pay a portion of [Appellees'] expenses[.]" J.A. 1440. Later that same month, and again the following month (May 2018), Blackbird offered "a 'walk-away' settlement whereby [Appellees] would receive a license to the ['976] patent for zero dollars, and the case would be dismissed." J.A. 2239 (describing the April 2018 offer), 2539 (describing the May 2018 offer). Once again, Appellees declined. J.A. 2239; *see* J.A. 2239–40 (Blackbird's Vice President and Head of Litigation stating that "[Appellees], through counsel, have rejected all settlement offers by Blackbird . . . , including the zero-dollar 'walk-away' offer. . . . I understand the reasoning for this to be that [Appellees] have a belief that they will ultimate[ly] be awarded their legal fees after judgment in this matter").

In May 2018, shortly before discovery was scheduled to end, Appellees filed a motion for summary judgment. J.A. 555–75 (Motion for Summary Judgement). Blackbird opposed, J.A. 1215–45, but, after Appellees' motion was fully briefed, and without notifying Appellees in advance, Blackbird filed a notice of voluntary dismissal with prejudice, J.A. 1338–39 (Notice of Voluntary Dismissal), executed a covenant not to sue, J.A. 1334–35 (Covenant Not to Sue), and filed a motion to dismiss for lack of subject matter jurisdiction, J.A. 1323–28 (Motion to Dismiss).[3] *See*

---

    3   In its Motion to Dismiss, Blackbird argued that because it issued Appellees a "covenant not to sue on all claims of [the '976 patent]," "no case or controversy exists

J.A. 1441 (Appellees' lead counsel explaining that "Blackbird's counsel never mentioned that he intended to file a covenant not to sue. . . . Blackbird surprisingly filed a Notice of Dismissal, Covenant Not to Sue[,] and Motion to Dismiss"); Oral Arg. at 20:19–20:38 (Appellees' counsel stating that Appellees "didn't even get a call from Blackbird, [Appellees] just saw . . . on the [CM/]ECF [system] that [Blackbird] had filed these documents dismissing the case").

In June 2018, the District Court dismissed Blackbird's claims with prejudice and denied Blackbird's Motion to Dismiss, while authorizing Appellees to "seek to recover their costs, expenses, and/or attorney[] fees." J.A. 1383–85. That same month, Appellees filed a motion for attorney fees and expenses, J.A. 1386–87 (Motion for Attorney Fees and Expenses), 1390–1417 (Memorandum in Support of Motion for Attorney Fees and Expenses), requesting $357,768.50 in attorney fees and $5,475.30 in expenses, J.A. 1417. In September 2018, the District Court issued its Order granting Appellees' Motion for Attorney Fees and Expenses for the total requested amount of $363,243.80. J.A. 17–20.

## DISCUSSION

### I. Standard of Review and Legal Standard

By statute, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (2012). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "[T]here is no precise rule or formula for

---

between the parties," and thus "the case has been mooted, and should be dismissed." J.A. 1324; *see* J.A. 1325–27.

making these determinations"; instead, district courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* (internal quotation marks and citation omitted).

On appeal, we "review all aspects of a district court's § 285 determination for abuse of discretion." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 561 (2014). A district court abuses its discretion when it "'base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1387 (Fed. Cir. 2017) (quoting *Highmark*, 572 U.S. at 563 n.2). "A factual finding is clearly erroneous if, despite some supporting evidence, we are left with the definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks and citation omitted). "We apply Federal Circuit case[]law to the § 285 analysis, as it is unique to patent law." *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1366 (Fed. Cir. 2007) (citation omitted).

## II. The District Court Did Not Abuse Its Discretion in Concluding that This Case Is "Exceptional" Under 35 U.S.C. § 285

Considering the "totality of the circumstances," the District Court found that Blackbird's case against Appellees is "exceptional within the meaning of [§] 285 and *Octane Fitness*." J.A. 18. Specifically, the District Court determined that Blackbird's case against Appellees is "exceptional" because it "stand[s] out from . . . others with respect to" both "the substantive strength of [Blackbird's] litigation position" and "the unreasonable manner in which the case [was] litigated" by Blackbird. J.A. 17–18. The District Court also found that "granting a fee award [was] warranted" in this case "to deter future abusive litigation." J.A. 19. Finally, the District Court concluded that

Appellees' requested award of $363,243.80 was reasonable considering each attorney's "comparable skill, experience, and reputation." J.A. 19 (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). We review each of the District Court's determinations in turn.

### A. The District Court Did Not Abuse Its Discretion in Determining that This Case "Stands Out" with Respect to the Lack of Substantive Strength in Blackbird's Litigation Position

The District Court found that Blackbird's litigation position was "meritless" and "frivolous." J.A. 18–19. Specifically, the District Court determined that "[w]hen challenged on the merits, [Blackbird] raised flawed claim construction and infringement contentions," and ultimately "did not prevail on the merits . . . because [Blackbird] dismissed its claims with prejudice, and submitted a covenant not to sue on the eve of trial." J.A. 18. Blackbird argues, however, that its "claim construction and infringement positions were eminently reasonable, and likely correct." Appellant's Br. 19; *see id.* at 19–29. We disagree with Blackbird.

Independent claim 1 of the '976 patent requires a "housing" that includes a "structural surface defining a prescribed concave arcuate contour" that: (1) delimits an inside, i.e., "within the housing," and an "outside" of the "housing," '976 patent col. 16 ll. 45–52; and (2) includes "at least three cable exit points . . . each . . . having [a cable] passed therethrough," i.e., from "within the housing" to "outside" the "housing," *id.* col. 16 ll. 43–45.[4] Additionally, independent claim 1 requires that a "common source of

---

[4] Blackbird alleged, in its Original and Amended Complaints, that HIM infringed "at least [independent] claim 1 of the '976 patent." J.A. 425, 520; *see* J.A. 426–27, 521–23, 534.

resistance" be provided "within the housing." *Id.* col. 16 ll. 50–51. Before the District Court, Blackbird proposed to construe the term "housing" as a "part designed to shelter, cover, contain, or support a component." J.A. 1231. Even accepting Blackbird's proposed construction, the accused device does not include a "housing" that meets the requirements of independent claim 1. For example, to the extent the alleged "housing" of the M1 Multi-Gym includes a "concave[,] arcuate" "structural surface," the cables of the accused device are not "passed therethrough," i.e., from "within the housing" to "outside" the "housing," at even a single "exit point." *Compare* '976 patent col. 16 ll. 41–52, *with* J.A. 422, 517, 1176, 1185–86.[5] Rather, the cables of the M1 Multi-Gym are arranged outside of the alleged "housing," passing through a series of pulleys and flanges provided on the outside surfaces of the M1's tubular frame members. *See* J.A. 422–25, 517–20, 1176, 1185–86. Moreover, a "common source of resistance" is not provided "within" the alleged "housing" as required by independent claim 1. Instead, the weights of the M1 Multi-Gym are housed within a separate structural component. *See* J.A. 422, 517, 1176.[6]

---

[5] Before the District Court, Blackbird argued that the "housing" of the M1 Multi-Gym "consists of a 'heavy-duty round tubular steel' frame," that includes: (1) "upright supports"; (2) a "center upright brace"; and (3) a "main upright." J.A. 1240; *see* J.A. 1176–86 (depicting the M1 Multi-Gym).

[6] Blackbird contends that the District Court's decision should be vacated, because the "District Court never construed any claim element of the asserted patent." Appellant's Br. 15. In light of the material differences between the claims of the '976 patent and the accused device, even accepting Blackbird's proposed constructions, "[c]laim construction was unnecessary before finding

Blackbird's counterarguments are unpersuasive. First, Blackbird argues that "the record compels a reversal as a matter of law because . . . the District Court did not find Blackbird's arguments objectively baseless (merely 'flawed'), and that is insufficient to support an award of fees[.]" Appellant's Br. 9. However, the District Court's finding that Blackbird's "claim construction and infringement contentions" were "flawed," is only a single consideration among the totality of circumstances considered by the court in concluding that Blackbird's litigation position lacked substantive strength. J.A. 18; *see* J.A. 18–19; *see also Octane Fitness*, 572 U.S. at 554–55 (explaining that "there is no precise rule or formula" for determining whether a case "stands out from others with respect to the substantive strength of a party's litigating position"; instead, district courts may make this determination "in the case-by-case exercise of their discretion, considering the totality of the circumstances" (internal quotation marks and brackets omitted)).

Second, Blackbird argues that "[t]here is simply no basis for finding that Blackbird should have known its litigation position was purportedly weak," Appellant's Br. 19, as "neither [Appellees] nor the District Court put Blackbird on adequate notice of the purported weakness of its position to support an award of fees," *id.* at 9. The District Court was not obliged to advise Blackbird of the weaknesses in its litigation position, and further, while a "lack of . . . early notice . . . can support a denial of attorney[] fees," "we have not held that such notice is rigidly required." *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1358 (Fed. Cir. 2019). Moreover, the exercise of even a modicum of due diligence by Blackbird, as part of a pre-suit

---

noninfringement in this case[.]" *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016); *see* J.A. 18 (finding that the "['976] patent isn't infringed").

investigation, would have revealed the weaknesses in its litigation position. *See Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1307 (Fed. Cir. 2017) ("We cannot say that the district court erred in reasoning that had [the plaintiff] conducted a more searching pre-suit investigation . . . it would have not filed suit. Nor did the district court err in treating pre-suit diligence as a factor in the totality-of-the-circumstance approach[.]"). It is also unclear what effect, if any, notice would have had on Blackbird's conduct, as Blackbird waited until the "eve of trial" to dismiss its suit, J.A. 18; *see* J.A. 33, 35–36, despite being aware of Appellees' non-infringement contentions months before, *see* Appellant's Br. 5.

At a minimum, Blackbird was aware of Appellees' intention to seek attorney fees and expenses as early as December 2016, when, in answering Blackbird's Original Complaint, Appellees requested attorney fees and expenses. J.A. 510. While this request may not have provided the "focused" and "supported" notice that we have looked for in other cases, *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018), it undermines Blackbird's attempt to blame others, including the District Court, for it being purportedly unaware of the weaknesses in its litigation position. Accordingly, the District Court did not abuse its discretion in determining that this case "stands out" with respect to the lack of substantive strength in Blackbird's litigation position.

### B. The District Court Did Not Abuse Its Discretion in Determining that This Case "Stands Out" with Respect to the Manner in Which Blackbird Litigated

The District Court did not limit its findings to the substantive strength of Blackbird's litigation position, and further determined that Blackbird's case against Appellees was "exceptional" because Blackbird "litigated . . . in an unreasonable manner." J.A. 18. The District Court made multiple findings to support this determination, J.A. 18,

each of which is supported by the record.  First, the District Court found that Blackbird "made multiple settlement demands that were far less than the anticipated cost of defense," i.e., nuisance value settlement offers.  J.A. 18; *see, e.g.*, *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (finding that the district court did not err in determining that the patentee had "acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement").  By its own admission, Blackbird made a series of decreasing settlement offers, *see* Appellant's Br. 5–7; *see also* J.A. 1440, 2069, 2239–41, 2539, each of which was significantly less than the cost of litigation, *see* J.A. 1417 (Appellees' litigation costs totaled at least $363,243.80).

Second, the District Court found that Blackbird unreasonably "delayed in producing documents, withheld many documents until after [Appellees] took [Blackbird's] deposition[,] and completely failed to produce other responsive documents."  J.A. 18.  Again, the record supports the District Court's findings; indeed, the record shows numerous, unexcused delays by Blackbird in producing documents, *see, e.g.*, J.A. 2084, as well as Blackbird's attempts to withhold responsive documents entirely, without notice or excuse, until Appellees learned of the documents during depositions, *see* J.A. 1440–41; Oral Arg. at 3:54–6:03 (Blackbird admitting that it "had the documents in-house" yet failed to produce them), 24:13–24:50 (Blackbird admitting "[t]hat [it] is true" that "documents identified in th[e] deposition" have never been produced).[7]  While Blackbird subsequently implied that some of these documents might be privileged, *see* J.A. 2230, Blackbird has failed to identify

---

[7]   As Appellees aptly point out, "Blackbird is an all-in-one affair, in which employee-attorneys possessed the documents, which were not . . . produced prior to the depositions[.]" Appellees' Br. 35; *see* Oral Arg. at 3:53–4:25.

in the record any such assertion of privilege prior to the depositions.

Finally, the District Court determined that Blackbird had unreasonably "filed a notice of dismissal, covenant not to sue, and motion to dismiss without first notifying [Appellees'] counsel, on the same day pretrial submissions were due and shortly before [Appellees'] motion for summary judgment was to be decided." J.A. 18. The record supports these findings. *See* J.A. 33, 35–36, 1323–28, 1334–35, 1338–39, 1441. Accordingly, the District Court did not abuse its discretion in determining that this case stands out with respect to the manner in which Blackbird litigated.

C. The District Court Did Not Abuse Its Discretion by Considering the Need to Deter Future Abusive Litigation

In addition to its findings as to the substantive strength of Blackbird's litigation position and conduct during litigation, the District Court found that "granting a fee award [was] warranted" in this case "to deter future abusive litigation." J.A. 19; *see* J.A. 19 (explaining that Blackbird "has filed over one hundred patent infringement lawsuits, and none have been decided, on the merits, in favor of [Blackbird]").[8] Doing so was "within the scope of [the

---

[8] As of August 2018, Blackbird had filed "over 110" lawsuits since its inception in 2014. J.A. 1439 (citing J.A. 1961–64); *see* J.A. 2238 (Blackbird acknowledging that as of July 16, 2018, "Blackbird . . . ha[d] filed over 100 individual lawsuits since its inception, asserting over 20 different patents"). Blackbird admits that the vast majority of these lawsuits were settled before a determination on the merits could be made, *see* Appellant's Reply Br. 5, and acknowledges that not a single of its lawsuits "ha[s] reached a full, final decision on the merits," Oral Arg. at 3:26–3:53.

District Court's] discretion in finding this case to be exceptional based on the weakness of [Blackbird's infringement contentions] and the need to deter similarly weak arguments in the future." *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377–78 (Fed. Cir. 2017). The District Court therefore did not abuse its discretion by considering the need to deter future abusive litigation. Accordingly, the District Court did not abuse its discretion in concluding that Blackbird's case against Appellees is "exceptional" within the meaning of 35 U.S.C. § 285.[9]

### III. The District Court Did Not Abuse Its Discretion in Determining that Appellees Are Entitled to $363,243.80 in Attorney Fees and Expenses

The District Court concluded that Appellees' requested award of $363,243.80 was reasonable considering each attorney's "comparable skill, experience, and reputation." J.A. 19 (citing *Blum*, 465 U.S. at 888). Blackbird contends, however, that "[e]ven if some award of fees [is] permissible," Appellant's Br. 9, "the District Court erred in awarding fees for the full amount of the litigation, in two respects," *id.* at 38: (1) "by failing to consider the reasonableness of the hours worked," *id.* at 39; and (2) "by awarding fees for the entirety of the litigation rather than

---

[9] Blackbird challenges the sufficiency of the District Court's findings and reasoning underlying its determination that this case is "exceptional," *see* Appellant's Br. 14–19, arguing that remand is necessary because "the District Court did not supply the facts and reasoning it relied upon," *id.* at 16. As our review of the District Court's decision makes clear, the District Court "provide[d] a basis for meaningful appellate review," by setting forth factual findings and "the reasoning underlying its decision." *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1377 (Fed. Cir. 2001).

relating it to the purported misconduct," *id*. at 40. We disagree with Blackbird.

The District Court's Order demonstrates its consideration of the record, including Appellees' "detailed breakdown of the tasks performed by each lawyer, the [billing] rate of each lawyer, and the *time spent by each lawyer*" working on this case. J.A. 19 (emphasis added); *see* J.A. 19–20; *see also Lumen View*, 811 F.3d at 483 ("In calculating an attorney fee award, a district court usually applies the lodestar method, which provides a presumptively reasonable fee amount, by multiplying a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case." (internal citations omitted)). Appellees requested, in total, fees corresponding to just over 650 hours of work, J.A. 1413, an amount that the District Court did not abuse its discretion in awarding, especially considering, as the record shows, that this case was the subject of extensive motions practice and trial preparation, including, inter alia: a motion to transfer that was fully briefed and granted in Appellees' favor, J.A. 28–29, 536, 547; a motion for summary judgment that was fully briefed, J.A. 34–35, 555–75; a motion to dismiss that was filed, J.A. 35, 1321–28; pre-trial submissions that were prepared for filing, J.A. 36; and considerable discovery that was completed, including bi-coastal depositions, J.A. 1966, 1976, 1985, 1987, 2003–07, 2489, 2499–2509.[10]

---

[10] Blackbird argues also that the District Court erred in awarding Appellees attorney fees corresponding to forty hours that "were an estimate of future services to be rendered briefing a reply in the motion for fees and preparation for and attendance at a hearing the [District] Court never held." Appellant's Br. 39 (emphasis omitted). Appellees' counsel clarified during oral argument, however, that they "actually . . . exceeded the forty hours." Oral Arg. at 17:05–17:27.

Blackbird's contention that "[g]iven the amount at stake, the District Court should have determined whether it was reasonable to expend so many hours on such a small claim" is misplaced. Appellant's Br. 39. Indeed, 650 hours, for this litigation, is a far cry from the "countless hours" we have cautioned against. *Bywaters v. United States*, 670 F.3d 1221, 1231 (Fed. Cir. 2012) ("Where only a small amount is at stake, it certainly would not be reasonable to expend countless hours on such a small claim[.]"). To hold otherwise would, in effect, cause Appellees to make the untenable choice between: (1) submitting to Blackbird's settlement demands—small as they may be; or (2) risking non-reimbursement of attorney fees accrued in defending themselves against Blackbird's unmeritorious claims. Moreover, the record supports the conclusion that Blackbird's misconduct "so severely affected every stage of the litigation that a full award of attorney fees was proper here." *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir. 2013). As the District Court found, "from the very early stages of this case until the attorney[] fees stage, there has been exceptional conduct by [Blackbird]." J.A. 18–19. Accordingly, the District Court did not abuse its discretion in awarding Appellees the full requested amount of $363,243.80.

## Conclusion

We have considered Blackbird's remaining arguments and find them unpersuasive. Accordingly, the Order of the U.S. District Court for the Central District of California is

**AFFIRMED**